# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3517
_____

Sophia C. Baker White

*Petitioner*

v.

Monty Wilkinson, Acting Attorney General of the United States[1]

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: October 22, 2020
Filed: March 4, 2021

_____

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.

_____

SMITH, Chief Judge.

Sophia C. Baker White, a Swiss native and citizen of the United Kingdom, overstayed her United States visa. She was charged with removability, and the

---

[1]Monty Wilkinson is serving as Acting Attorney General of the United States, and is substituted as respondent pursuant to Federal Rule of Appellate Procedure 43(c).

immigration judge (IJ) found her removable. Baker White then applied for cancellation of removal. The IJ denied her application, and she appealed to the Board of Immigration Appeals ("Board"). The Board upheld the denial and dismissed her appeal.

Several months later, Baker White filed a motion to reopen the cancellation-of-removal proceedings, arguing that she had a change in circumstances that warranted reopening. The Board denied her motion as untimely because it was filed more than 90 days after the Board had issued a final administrative decision. The Board, however, had failed to consider 8 U.S.C. § 1229a(c)(7)(C)(iv), which extends the filing deadline to one year for certain "battered spouses, children and parents," so Baker White petitioned this court to review the Board's decision. We remanded Baker White's case to the Board after the government filed an unopposed motion to remand for the Board to consider the one-year extension.

On remand, the Board found that Baker White's filing was timely, but it again denied her motion to reopen. The Board denied Baker White's motion for two independent reasons: First, it held that Baker White did not submit new and material evidence showing that a different outcome would be reached regarding her removal. Second, the Board held she was not entitled to discretionary relief, based on her moral character. Baker White petitioned this court for review.

Baker White argues that the Board erred in three ways when it denied her motion to reopen: (1) the Board violated her due-process rights, (2) the evidence she presented to the Board was new and material, and (3) the Board improperly used its discretion to deny her motion. We deny her petition for review.

I. *Background*

Baker White moved to the United States in 2006 as the child of an L-1 visa holder. In 2012, she transitioned to an F-1 student visa. Baker White complied with

her visa for about two and a half years but then stopped attending college, ending compliance. In May 2014, Baker White married her son's father; both the son and father are U.S. citizens. During the marriage, Baker White's husband physically, emotionally, and psychologically abused her. Eventually, Baker White obtained two no-contact orders against her husband, which he violated in July 2017.

Shortly thereafter, Minnesota authorities arrested Baker White four times within a three-month span. In late September 2017, Baker White was arrested for possession of marijuana. In late October, she was arrested for shoplifting. In mid-November, she was arrested on two counts of arson. And in late November, she was arrested for theft of a motor vehicle.

In December 2017, while the charges against Baker White were pending, the Department of Homeland Security initiated removal proceedings against her. The IJ found her removable on January 9, 2018. All the charges against her were still pending.

On January 30, 2018, at a hearing before the IJ, Baker White submitted her application for cancellation of removal. She sought cancellation of removal based on either (1) exceptional and extremely unusual hardship on her U.S. citizen son or (2) special-rule cancellation for abused spouses. The IJ held two merits hearings. During the first hearing, Baker White testified. Much of her testimony focused on her husband's abuse and the charges against her. She also explained that the October shoplifting charge against her had been dismissed. The second hearing featured four witnesses who testified to Baker White's good moral character and her husband's abuse.

Following the hearing, the IJ denied Baker White's application for two independent reasons. First, Baker White failed the "good moral character" element required for both her argued bases. Specifically, the IJ took note of (1) her rash of

arrests and the seriousness of the charges against her; (2) her "wholly incredible" testimony before the IJ about the arrests, Pet'r's Addendum at 21; (3) her regular association with drug users and other criminals; and (4) her leaving her son in a house with drug users. Second, the IJ exercised discretion to deny both bases of Baker White's application. The IJ identified and weighed the factors it was required to evaluate; it found that the unfavorable factors (including Baker White's arrests, the seriousness of the charges against her, her lack of candor during testimony, her association with drug users and other criminals, and a dearth of family ties in the United States) outweighed the favorable ones (such as Baker White's length of U.S. residency and the potential hardship on her son if she were removed).

Baker White appealed the IJ's decision to the Board. On September 20, 2018, the Board affirmed the denial of her application for cancellation of removal.

Afterwards, the three remaining charges against Baker White were dismissed. First, the September marijuana charge was dismissed after a one-year probation and stay of adjudication. Also, a man who was arrested with Baker White during the marijuana incident provided a sworn statement that "the drugs . . . were [his]." Admin. R. 155. Second, the arson charges were dismissed because a "witness was unable to be located and the State was not able to proceed without the witness." *Id.* at 143. And the auto-theft charge was dismissed because Baker White was "in the custody of the United States Immigration and Customs Enforcement" and she was "under a deportation order and the State [was] not able to secure her appearance for trial." *Id.* at 158. Additionally, she regained custody of her son.

On January 28, 2019, Baker White filed a motion with the Board to reopen removal proceedings.[2] She argued that, although the usual deadline for filing a motion

---

[2]Baker White also applied for a stay of removal, which the Board denied. Baker White took no further action regarding the Board's decision to deny her stay.

to reopen is 90 days under 8 U.S.C. § 1229a(c)(7)(C)(i), she had a one-year window to file her motion because she was an abused spouse under § 1229a(c)(7)(C)(iv). She also included with her motion several pieces of new evidence to show changed circumstances: (1) the dismissals of the three remaining charges against her, (2) state-court documents showing that Baker White had regained full custody of her son, and (3) records of her participation in parenting classes and a drug-abuse program and of her status as a model prisoner. The other evidence she presented, such as additional evidence of her abusive husband, was available when she was before the IJ and therefore not new. The Board denied her motion as untimely, without considering the one-year extension. Baker White appealed to this court, and the government submitted an unopposed motion to remand for the Board to consider the one-year extension. We granted the remand.

On remand, in its October 28, 2019 decision, the Board found Baker White's motion timely. But it again denied her motion for two independent reasons. First, it found that the evidence Baker White presented was not new and material. Much of the evidence predated her appearance before the IJ, including all the evidence of her husband's abuse; thus, it was not new. And upon its review, the Board found that her newly submitted evidence was not material; that is, it would not have changed the outcome of the cancellation-of-removal proceedings. The Board noted the dismissals of charges against Baker White but explained that the IJ's decision did not rest solely on Baker White's arrest record; instead, the decision was based predominately on Baker White's testimony and credibility.[3] The Board alternatively concluded that even if the new evidence had been material it would have nonetheless denied Baker

---

[3]The Board noted that the IJ "appear[ed] to have been incorrect" about Baker White's criminal record at the time of the IJ's decision because the IJ stated "that only two of the criminal charges against the respondent . . . remained pending" when, in fact, "only one of the [five] charges had been dismissed." Pet'r's Addendum at 4 n.4. But the Board found that "this error was harmless as it, at best, inured to [Baker White's] benefit." *Id.*

White's motion to reopen because she was not entitled to discretionary relief. It explained that the IJ had followed the prescribed procedure and weighed the appropriate factors. The Board concluded that the IJ's decision would have been unaffected by knowledge of the dismissal of the charges the IJ believed were still pending.

## II. *Discussion*

On appeal, Baker White argues that the Board (A) denied her due process, (B) erred by denying her motion to reopen for lack of new and material evidence, and (C) erred by exercising its discretion to deny her motion.[4]

## A. *Due-Process Claims*

Baker White makes three due-process arguments. First, she argues that she "has established . . . that her due process rights were violated" because the Board and IJ relied, in part, on her arrest record, though she later "show[ed] that the crime for

---

[4]In her briefs, Baker White asks us to review several decisions other than the Board's October 28 decision denying her motion to reopen, such as the Board's long-passed denial of her motion to stay removal. In Baker White's petition for review, however, she indicated she is only petitioning for review from the Board's October 28 denial. The petition is silent regarding decisions unrelated to that one.

Our jurisdiction to review the denial of a motion to reopen comes from 8 U.S.C. § 1252. *Mshihiri v. Holder*, 753 F.3d 785, 788 (8th Cir. 2014). Under § 1252(c)(1), we only have jurisdiction to review an order that is identified in the petition for review. *See* 8 U.S.C. § 1252(c)(1) ("A petition for review . . . shall attach a copy of such order [to be reviewed] . . . ."); *cf. Johnson v. Leonard*, 929 F.3d 569, 575 (8th Cir. 2019) (explaining that when a notice of appeal "specifies one order of the district court . . . , but fails to identify another, the notice is not sufficient to confer jurisdiction to review the unmentioned order" (quoting *Rosillo v. Holten*, 817 F.3d 595, 597 (8th Cir. 2016))). Thus, we may only review Baker White's arguments that deal with the Board's October 28 denial of her motion to reopen—the decision indicated in her petition for review.

which she was previously charged ha[d] in fact been dismissed." Pet'r's Br. at 20. Second, she asserts that "[t]he Board's refusal to consider the merits of a motion to reopen violated [Baker White's] constitutionally protected liberty interest in remaining in and/or returning to the United States without affording her due process consistent with the Fifth Amendment." *Id.* at 21. And third, she claims that "[b]ecause police reports are not generally reasonable, substantial, and probative evidence," the Board's and IJ's "use [of police reports was] not fundamentally fair and d[id] not comport with the principles of due process." *Id.* at 28. All three arguments fail.

In *Rodriguez v. Barr*, another case involving the denial of a motion to reopen, we explained that a petitioner must have "a protected property or liberty interest" to succeed on a due-process claim. 952 F.3d 984, 990 (8th Cir. 2020) (quoting *Ibrahimi v. Holder*, 566 F.3d 758, 766 (8th Cir. 2009)). But in *Rodriguez*, the petitioner's "claim fail[ed] because if the [Board] had reopened the case, the issue was whether Rodriguez was entitled to cancellation of removal—a form of discretionary relief that Rodriguez ha[d] no constitutionally protected interest in receiving." *Id.* The same is true for Baker White.

The issue is not, as she frames it, her interest in having a presence in the United States or having the agency weigh certain evidence in her favor. Instead, the issue is whether she has a constitutionally protected interest in receiving a second try at a cancellation-of-removal proceeding. As we found in *Rodriguez*, Baker White has no such protected interest in a second cancellation-of-removal proceeding because the grant of relief would be discretionary. *See Sanchez-Velasco v. Holder*, 593 F.3d 733, 737 (8th Cir. 2010) ("[A]liens have no right to due process in the purely discretionary remedy of cancellation of removal because no constitutionally cognizable liberty interest arises from it. That is because cancellation of removal is roughly equivalent to executive clemency, over which the executive branch has unfettered discretion." (cleaned up)); *Guled v. Mukasey*, 515 F.3d 872, 880 (8th Cir. 2008) ("Because adjustment of status amounts to a power to dispense mercy, an alien can have no

constitutionally protected liberty interest in such speculative relief and cannot state a claim for a violation of due process rights."). Thus, her constitutional claims for discretionary relief fail.

## B. *Denial of Motion to Reopen*

We review the denial of a motion to reopen for an abuse of discretion. Such motions may unnecessarily extend proceedings and delay finality. *Alva-Arellano v. Lynch*, 811 F.3d 1064, 1066–67 (8th Cir. 2016). The Board abuses it discretion if "it gives no rational explanation for its decision, departs from its established policies without explanation, relies on impermissible factors or legal error, or ignores or distorts the record evidence." *Patel v. Sessions*, 868 F.3d 719, 725 (8th Cir. 2017) (quoting *Guled*, 515 F.3d at 882).

The Board may deny a motion to reopen on "at least three independent grounds." *Njie v. Lynch*, 808 F.3d 380, 384 (8th Cir. 2015) (quoting *Poniman v. Gonzales*, 481 F.3d 1008, 1011 (8th Cir. 2007)). If the Board properly denied the motion on any one of them, we affirm. First, it may deny a motion to reopen if the movant failed to make a prima facie case she was entitled to the underlying cancellation of removal. *Id.* Second, it may deny the motion if the movant failed to produce evidence that is new and material. *Id.* Third, the Board may deny the motion if it determines the movant is not entitled to the discretionary relief she seeks. *Id.* Only the second and third grounds are relevant here.

### 1. *New and Material Evidence*

Under the second independent ground, evidence is new if it was unavailable at the cancellation-of-removal hearing. *Degbe v. Sessions*, 899 F.3d 651, 657 (8th Cir. 2018). Evidence is material if it is "likely [to] change the result in the case." *Id.* (quoting *Berte v. Ashcroft*, 396 F.3d 993, 997 (8th Cir. 2005)).

As the Board acknowledged, much of Baker White's evidence was not new. Baker White's new evidence consisted of: documents showing that the charges

against her were dismissed, a state-court judgment granting her custody of her son, and reports on her good behavior and attendance at treatment and parenting programs in prison. The Board did not abuse its discretion by finding that these new pieces of evidence were not material.

First, the Board explicitly addressed that the charges against Baker White had been dismissed. It reasoned that the IJ's moral-character finding was not based on Baker White's "arrest records and . . . pending criminal cases" but "was based on inconsistent testimony about [her] character and the evidence of record." Pet'r's Addendum at 4 (quotation omitted). Thus, it concluded that the dismissals of the remaining charges were immaterial. The Board was correct; the IJ did not premise her decision on Baker White's arrests and criminal charges. The IJ "acknowledge[d] that [Baker White's] criminal charges, at least two of them, the arson and the auto theft, remain[ed] pending," but the IJ found that the main problem was that Baker White had "set aside or placed less value on her responsibilities as a mother in the interest of associating with unsavory individuals and getting herself into a mess of trouble." *Id.* at 29. Because the arrests and charges did not form the gravamen of the IJ's decision, the Board did not abuse its discretion by finding the charges' dismissals were not material. We also note that the reasons the charges were dismissed did not necessarily confirm Baker White's innocence: completing a one-year probation, the state's inability to secure a witness necessary to continue the case against her, and being in federal detention and thus unable to attend a state criminal trial.

Second, the Board acknowledged that Baker White presented evidence that she had regained custody of her son. It did not explicitly analyze whether Baker White's custody over her son was material, presumably because it did not believe custody was material. Upon review, we do not believe that the Board abused its discretion by not explicitly explaining why Baker White's regained custody was immaterial. At the custody hearing, which occurred ten days before Baker White filed her motion to reopen, the state court found that it was "in the best interests of" Baker White's son "to return full legal and physical custody of the [son] to [Baker White] and [have him]

-9-

move to England with her" because Baker White's "repatriation [would] remove her from her abusive situation." Admin. R. 162. It also stated that "in a controlled environment" Baker White "ha[d] been sober for over a year." *Id.* While it is laudable that Baker White regained custody of her son, the IJ focused on Baker White's tendency to "leav[e] her son in what [Baker White] . . . described as a chaotic or crazy home with known drug users and unsavory individuals," which was "indicative of someone who has put herself ahead of the needs of her son." Pet'r's Addendum at 29. Under these facts, Baker White's regained custody is not enough to overcome the agency's broad discretion because Baker White's regained custody was premised on her repatriation and moving with her son to England, not on correcting her moral trajectory.

Finally, the Board's decision did not mention Baker White's reports indicating she had attended parenting and treatment programs in prison or the reports about her good behavior in prison. But the Board is not required to name every piece of evidence that was before it. *Cf. Sharif v. Barr*, 965 F.3d 612, 624 (8th Cir. 2020) ("'[T]he [Board] is entitled to a presumption of regularity,' and 'it is not required by the Constitution to mention every piece of evidence that it considered.'" (quoting *Doe v. Holder*, 651 F.3d 824, 831 (8th Cir. 2011))). In its decision, the Board explained it "ha[d] considered in [its] review" Baker White's "various challenges." Pet'r's Addendum at 2. This included Baker White's discussion of the reports in her motion to reopen. We cannot say that the Board abused its discretion by concluding the reports were not sufficiently material to warrant discussion in its final decision.

The Board did not abuse its discretion when it denied Baker White's motion for failure to present new and material evidence.

## 2. *Discretionary Denial*

Because the Board did not abuse its discretion when it denied Baker White's motion to reopen for failure to present new and material evidence, we need not address Baker White's argument that it erred by denying her motion under the discretionary ground.

### III. *Conclusion*

We thus deny Baker White's petition for review.

_____